UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, as subrogee of Young .I Kim and Young H. Kim, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) **CASE NO. 3:22-cv-315-RLM-MGG** |
| RHEEM MANUFACTURING COMPANY and RELIANCE WORLDWIDE CORPORATION d/b/a CASH ACME, | ) ) ) ) |
| Defendants. | ) ) |
| RHEEM MANUFACTURING COMPANY, | ) ) |
| Crossclaim Plaintiff, | ) ) |
| vs. | ) ) |
| RELIANCE WORLDWIDE CORPORATION d/b/a CASH ACME, | ) ) ) |
| Crossclaim Defendant. | ) ) |

## ANSWER AND CROSS-CLAIM OF RHEEM MANUFACTURING COMPANY

This Defendant, Rheem Manufacturing Company, for its Answer to the "Complaint", states:

### THE PARTIES

1. Plaintiff State Farm Fire and Casualty Company ("State Farm Fire and Casualty") is an insurance company duly authorized to conduct business in the State of Indiana.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

2.	At all material times, Young I. Kim and Young H. Kim ("hereinafter "the Kims") were the owner of a home located at 51670 Ashton Court, Grainger, Indiana 46530 (the "Home").

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

3.	At all material times, the Home was the subject of a policy of insurance written by Plaintiff State Farm Fire and Casualty, which, among other things, provided coverage for damage caused to the Home by water.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

4.	Upon information and belief, at all material times Defendant Rheem Manufacturing Company (hereinafter "Rheem") was a Delaware corporation with its principal place of business in Atlanta, Georgia, and was engaged in the business designing, manufacturing, marketing, and distributing water heaters and/or components of water heaters in the State of Indiana.

**ANSWER: It is admitted only that this Defendant is a Delaware corporation with its principal office in Atlanta, Georgia. All remaining allegations (and inferences) are denied.**

5.	Upon information and belief, at all material times Defendant Reliance Worldwide Corporation d/b/a Cash Acme (hereinafter "Cash") was an Alabama corporation with its principal place of business in Cullman, Alabama, and was engaged in the business of designing, manufacturing, marketing, and distributing temperature and pressure control valves (hereinafter "T&P valve") and/or components of water heaters in the State of Indiana.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

## FACTUAL ALLEGATIONS

6. This action arises out of water damage caused to the Home and its equipment on or about March 3, 2020.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

7. Investigations into the water loss revealed that it was caused by a failure in the water heater at the home, which was marketed, distributed, and sold as a Rheem water heater, model number XG40T06PV40UO (the "subject water heater").

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

8. Specifically, the T &P valve of the subject water heater malfunctioned, allowing water to drain from the water tank and flood the Home.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

9. The Kims retained ICON Plumbing and Construction to complete the installation of the water heater at issue.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

10. Two water heaters, both of the same model, were purchased at Home Depot.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

11. Upon information and belief, the subject water heaters were installed at the Home by ICON Plumbing and Construction on or about August 15, 2018.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

12. Upon information and belief, Defendants Rheem and/or Cash designed, manufactured, marketed, distributed, and/or sold the subject water heater and/or the T &P valve of the subject water heater.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

13. Upon information and belief, the subject water heater and/or T&P valve was not altered, modified, or repaired in any way subsequent to its purchase and installation at the Home.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

14. Pursuant to their policy of insurance, the Kims made a claim seeking indemnification and reimbursement for the damage caused by the March 3, 2020 water loss at the Home.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

15. Plaintiff State Farm Fire and Casualty has since paid to or on behalf of the Kims a sum in excess of $1,000,000 for repairs, replacement, and other associated expenses stemming from the water loss.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

16. In consideration of this payment by Plaintiff State Farm Fire and Casualty to or on behalf of the Kims, and by operation of law, State Farm Fire and Casualty became an actual, bona fide subrogee of the Kims, and became subrogated to his rights and claims against any person or entity that may be liable for causing the water loss at the Home.

**ANSWER: Denied.**

## COUNT I

## STRICT PRODUCT LIABILITY-RHEEM

17. Plaintiff State Farm Fire and Casualty repeats and re-alleges the allegations contained in Paragraphs 1 through 16 of this Complaint as though fully set forth in this Count I.

**ANSWER: All prior responses are incorporated.**

18. Upon information and belief, at all material times, Defendant Rheem designed, manufactured, distributed, marketed, and/or sold water heaters and/or certain components of water heaters, including the subject water heater.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

19. Upon information and belief, the subject water heater was distributed for sale to the general public and consumers, including the Kims, in the same condition in which it was manufactured, designed, assembled, tested, inspected, distributed, marketed, and/or sold.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

20. At all material times, the subject water heater was used by the Kims for its ordinary, normal, and foreseeable use as a water heater.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

21. Upon information and belief, the subject water heater was not altered, modified, or repaired in any way subsequent to its purchase by the Kims.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

22. At all material times, Defendant Rheem was under a duty not to sell or supply products or components of products, including the subject water heater, in a defective condition that was unreasonably dangerous to foreseeable users when used in a reasonably expected manner.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

23. The subject water heater and its T&P valve were unreasonably dangerous and defective in light of its foreseeable and intended use at the time they left the control of Defendant Rheem in one or more of the following ways:

    a. The water heater and T&P valve were improperly manufactured so as to allow water to escape when the valve did not operate;

    b. The water heater and T&P valve were improperly designed so as to allow water to escape when the T&P valve failed to operate;

    c. The water heater and T&P valve were improperly tested so as to prevent a malfunction;

    d. The water heater and T&P valve was improperly inspected so as to allow a malfunction to occur;

  e. The water heater and T &P valve were improperly manufactured using unsafe and improper materials;

  f. The water heater and T &P valve failed to warn of the risk of malfunction and related risk of water damage;

  g. The water heater and T &P valve failed to properly operate in conformance with the typical useful life of such items; and/or

  h. Was otherwise unreasonably dangerous and/or defective.

**ANSWER: Denied (including denials of all subparts).**

24. As a direct and proximate result of the failure of Defendant Rheem to properly design, manufacture, and/or sell a safe water heater and/or components of the subject water heater, Plaintiff State Farm Fire and Casualty, as subrogee of the Kims, suffered damages, including the cost of repair, replacement, and other associated expenses in a sum in excess of $1,000,000.

**ANSWER: Denied.**

**WHEREFORE**, this Defendant, Rheem Manufacturing Company, by counsel, respectfully pray that the Plaintiff take nothing by way of its "Complaint" (and for all other proper relief, including, but not limited to, the recovery of all costs and fees associated with the defense of this case).

## COUNT II

## STRICT PRODUCT LIABILITY-CASH

25. Plaintiff State Farm Fire and Casualty repeats and re-alleges the allegations contained in Paragraphs 1 through 16 of this Complaint as though fully set forth in this Count II.

**ANSWER: All prior responses are incorporated.**

26. On information and belief, at all material times, Defendant Cash designed, manufactured, distributed, marketed, and/or sold T&E valves and/or certain components of water heaters, including the T&E valve of the subject water heater.

**ANSWER: This pleading paragraph 26 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph.**

27. On information and belief, the subject water heater T&E valve was a component part of a Rheem water heater for sale to the general public and consumers, including The Kims, in the same condition in which it was manufactured, designed, assembled, tested, inspected, distributed, marketed, and/or sold.

**ANSWER: This pleading paragraph 27 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph.**

28. At all material times, the subject water heater, including the T&E valve, was used by The Kims for its ordinary, normal, and foreseeable use as a water heater.

**ANSWER: This pleading paragraph 28 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph**.

29. Upon information and belief, the subject water heater was not altered, modified, or repaired in any way subsequent to its purchase by The Kims.

**ANSWER: This pleading paragraph 29 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph**.

30. At all material times, Defendant Cash was under a duty not to sell or supply products or components of products, including the T &E valve of the subject water heater, in a defective condition that was unreasonably dangerous to foreseeable users when used in a reasonably expected manner.

**ANSWER: This pleading paragraph 30 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph.**

31. The subject water heater and its T &E valve were unreasonably dangerous and defective in light of its foreseeable and intended use at the time it left the control of Defendant Cash in one or more of the following ways:

    a. The T &E valve was improperly manufactured so as to allow water to escape the water heater;

    b. The T &E valve was improperly designed so as to allow water to escape the water heater;

    c. The T &E valve was improperly tested so as to prevent a malfunction;

    d. The T &E valve was improperly inspected so as to allow a malfunction to occur;

    e. The T &E valve was improperly manufactured using unsafe and improper materials;

    f. The T &E valve failed to contain proper warnings on the risk of malfunction and related risk of water damage; and/or

    g. Was otherwise unreasonably dangerous and/or defective.

**ANSWER: This pleading paragraph 31 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph.**

32. As a direct and proximate result of the failure of Defendant Cash to properly design, manufacture, and/or distribute the T&E valve of the subject water heater, Plaintiff State Farm Fire and Casualty, as subrogee of the Kims, suffered damages, including the cost of repair, replacement, and other associated expenses in a sum in excess of $1,000,000.

**ANSWER: This pleading paragraph 32 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph**.

**WHEREFORE**, this Defendant, Rheem Manufacturing Company, by counsel, respectfully pray that the Plaintiff take nothing by way of its "Complaint" (and for all other proper relief, including, but not limited to, the recovery of all costs and fees associated with the defense of this case).

## COUNT III

## NEGLIGENCE-RHEEM

33. Plaintiff State Farm Fire and Casualty repeats and re-alleges the allegations contained in Paragraphs 1 through 16 of this Complaint as though fully set forth in this Count III.

**ANSWER:   All prior responses are incorporated.**

34. At all material times, Defendant Rheem owed a duty to the Kims to exercise reasonable skill and care in designing, marketing, distributing, and/or selling the subject water heater and its components.

**ANSWER: This Defendant is without sufficient information and therefore must deny the allegation.**

35. In breach of this duty, Defendant Rheem, through its employees, agents, and/or representatives, was negligent in one or more of the following ways:

   a. Failed to properly manufacture the subject water heater and/or its components;

   b. Failed to properly design the subject water heater so as to prevent water escape;

   c. Failed to property test the subject water heater so as to prevent water escape;

   d. Failed to properly inspect the subject water heater so to prevent water escape;

   e. Failed to use safe and proper materials in the manufacture of the subject water heater;

   f. Failed to warn of the risk of malfunction and related risk of water damage; and/or

   g. Was otherwise negligent.

**ANSWER: Denied (including denials of all subparts).**

36. As a direct and proximate result of the negligence of Defendant Rheem, Plaintiff State Farm Fire and Casualty, as subrogee of the Kims, suffered damages, including the cost of repair, replacement, and other associated expenses, in an amount in excess of $1,000,000.

**ANSWER: Denied.**

**WHEREFORE**, this Defendant, Rheem Manufacturing Company, by counsel,

respectfully pray that the Plaintiff take nothing by way of its "Complaint" (and for all other proper relief, including, but not limited to, the recovery of all costs and fees associated with the defense of this case).

## COUNT IV

## NEGLIGENCE-CASH

37. Plaintiff State Farm Fire and Casualty repeats and re-alleges the allegations contained in Paragraphs 1 through 16 of this Complaint as though fully set forth in this Count IV.

**ANSWER: All prior responses are incorporated.**

38. At all material times, Defendant Cash owed a duty to the Kims to exercise reasonable skill and care in designing, marketing, distributing, and/or selling the subject water heater and/or its components.

**ANSWER: This pleading paragraph 38 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph**

39. In breach of this duty, Defendant Cash, through its employees, agents, and/or representatives, was negligent in one or more of the following ways:

  a. Failed to properly manufacture the T&E valve of the subject water heater;

  b. Failed to properly design the T&E valve of the subject water heater;

  c. Failed to properly test the T&E valve of the subject water heater;

  d. Failed to properly inspect the T&E valve of the subject water heater;

  e. Failed to use safe and proper materials in the manufacture of the T&E valve of the subject water heater;

  f. Failed to warn of the risk of malfunction and related risk of water damage;

    and/or

    g. Was otherwise negligent.

**ANSWER: This pleading paragraph 39 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph.**

  40. As a direct and proximate result of the negligence of Defendant Cash, Plaintiff State Farm Fire and Casualty, as subrogee of the Kims, suffered damages, including the cost of repair, replacement, and other associated expenses, in an amount in excess of $1,000,000.

**ANSWER: This pleading paragraph 40 contains no allegation against this Defendant to which a response is required. To the extent a response is required, this Defendant has insufficient information and must therefore deny the pleading paragraph**.

  **WHEREFORE**, this Defendant, Rheem Manufacturing Company, by counsel, respectfully pray that the Plaintiff take nothing by way of its "Complaint" (and for all other proper relief, including, but not limited to, the recovery of all costs and fees associated with the defense of this case).

<b><u>AFFIRMATIVE DEFENSES</u></b>

  This Defendant, by counsel, for its affirmative defenses to the Complaint states:

  1. The Plaintiff's "Complaint" fails to state a claim upon which relief can be granted. <u>See</u> FRCP 12(b)(6).

  2. This Defendant relies upon the doctrine of "failure to mitigate".

  3. The Plaintiff's comparative fault (and that of its insureds Young I. Kim and Young H. Kim) (including contributory negligence, incurred/assumed risk, and failure to mitigate) bars (or proportionately reduces) any theoretical recovery.

4.      ICON Plumbing and Construction (whose address is known to Plaintiff) is hereby named as a "nonparty" (as that term is defined at I.C. § 34-6-2-88).

5.      Home Depot (whose address is known to Plaintiff) is hereby named as a "nonparty" (as that term is defined at I.C. § 34-6-2-88).

6.      Young I. Kim and Young H. Kim are each hereby named as a "nonparty" (as that term is defined at I.C. § 34-6-2-88).

7.      This Defendant relies upon the doctrines of "credit" and "set-off".

8.      This Defendant reserves the right to seek leave to add further affirmative defenses, including, but not limited to, naming other "nonparties" (as they become known during the "discovery" phase of the lawsuit).

9.      This Defendant relies upon the doctrines of "superseding cause" and "intervening cause".

10.     This Defendant relies upon the defense of "misuse". *See* I.C. § 34-20-6-4.

11.     The alleged product was in conformity with the generally recognized state of the art applicable to the safety of the product at the time that the product was designed, manufactured, packaged and labeled. *See* I.C. § 34-20-5-1(1).

12.     The alleged product complied with all applicable codes, standards, regulations, and/or specifications established, adopted, promulgated or approved by the United States or by Indiana or by an agency of the United States or Indiana. *See* I.C. § 34-20-5-1(2).

13.     The "sophisticated intermediary" and the "sophisticated user" doctrines bar Plaintiff's claims.

14.     This Defendant relies upon the "open and obvious" defense.

15.     This Defendant gives notice of its intent to rely upon all defenses permitted by the

Indiana Products Liability Act ("IPLA") (as enacted in Indiana [such as those found at I.C. §§ 34-20-1-1, et seq.]).

16. No act or omission of this Defendant responsibly caused the alleged damages of which Plaintiff complains.

17. This Defendant relies upon each applicable statute of limitations.

18. To the extent this Defendant has not specifically addressed any allegation of the Complaint (including those in the "Wherefore" clauses), they now are specifically "denied".

19. Each affirmative defense/other matter/matter of avoidance is pled in the alternative (without prejudice to any other, including this Defendant's position of blamelessness).

**WHEREFORE**, this Defendant, Rheem Manufacturing Company, by counsel, respectfully pray that the Plaintiff take nothing by way of its "Complaint" (and for all other proper relief, including, but not limited to, the recovery of all costs and fees associated with the defense of this case).

## CROSSCLAIM

The Crossclaim Plaintiff, Rheem Manufacturing Company, by counsel, for its Crossclaim against Reliance Worldwide Corporation d/b/a Cash Acme, states:

1. Rheem Manufacturing Company is a Delaware corporation with its principal office in Atlanta, Georgia.

2. Reliance Worldwide Corporation d/b/a Cash Acme ("Cash Acme") is an Alabama corporation with its principal place of business in Alabama.

3. Rheem Manufacturing Company manufactures water heaters with some water heaters that have parts manufactured by Reliance Worldwide Corporation d/b/a Cash Acme.

4. On March 2, 2022, State Farm Fire and Casualty Company initiated this lawsuit, in

part, against Rheem Manufacturing Company seemingly alleging that a water heater installed in their insureds' residence was defective and/or caused damages.

5. It is believed that the alleged water heater included parts manufactured by Cash Acme and sold to and purchased by Rheem Manufacturing Company and/or its related corporation.

6. Included in the Purchase Order for those parts between Cash Acme and Rheem Manufacturing Company and/or its related corporation, were the "Terms and Conditions" attached as Exhibit A.

7. The "Terms and Conditions" attached as Exhibit A contain the following indemnification clause:

> INDEMNIFICATIONS - Seller shall defend, indemnify and hold harmless Buyer and Buyer's affiliates, and each of their employees, officers, directors, agents, successors, assigns, customers and end-users of its products, from and against all losses, expenses, damages, costs, liabilities, claims, settlements, awards and judgments based on a claim that any good or service furnished by Seller, as well as any system, device or process incorporating or resulting from the use thereof, constitutes an infringement or misappropriation of any patent, trademark, copyright, trade secret or other intellectual property right. Seller shall defend, indemnify and hold harmless Buyer and Buyer's affiliates, and each of their employees, officers, directors, agents, successors, assigns, from and against all losses, expenses, damages, costs, liabilities, claims, settlements, awards and judgments arising out of, as a result of or in connection with: (a) Seller's acts and omissions in the performance of this Order or (b) any defect in design, materials, workmanship or quality of the goods and/or services or (c) Seller's negligence or willful misconduct or (d) any breach of any express or implied warranty or (e) Seller's violation of any federal, state or local law, executive order, rule or regulation. Seller shall maintain commercial general liability insurance (including products liability/completed operations coverage) with adequate limits satisfactory to Buyer and shall maintain proper Workmen's Compensation and Employer's Liability insurance covering all employees engaged in the performance of this Order, and, upon Buyer's request, shall furnish to Buyer appropriate evidence of such insurance.

8. Based on the "Terms and Conditions" incorporated in the Purchase Order, Cash Acme is contractually obligated to defend, indemnify, and hold harmless Rheem Manufacturing

Company regarding the claims of Plaintiff.

9. Cash Acme must appear for, defend, hold harmless, and indemnify, and pay all attorneys' fees of Rheem Manufacturing Company in accordance with the obligations it assumed in the Purchase Order contract.

10. This Crossclaim is made as required by law and Rheem Manufacturing Company in no way intimates that Plaintiff is entitled to recover further from it and, in fact, denies just that.

**WHEREFORE**, the Crossclaim Plaintiff, Rheem Manufacturing Company, prays for judgment in its favor against Reliance Worldwide Corporation and for costs and attorney's fees (and for all other just and proper relief in the premises).

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, this Defendant demands trial by jury.

**WHEREFORE**, this Defendant, Rheem Manufacturing Company, by counsel, respectfully pray that the Plaintiff take nothing by way of its "Complaint" (and for all other proper relief, including, but not limited to, the recovery of all costs and fees associated with the defense of this case).

Respectfully submitted,

**HUNT SUEDHOFF KEARNEY LLP**

/s/ Jeremy D. Lemon
Jeremy D. Lemon #30731-45
803 S. Calhoun Street, Suite 900
P.O. Box 11489
Fort Wayne, IN  46858-1489
(260) 423-1311
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of November, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Brad Gordon, Esq.
311 S. Wacker Drive, Suite 1500
Chicago, IL 60606

Edward Harney, Jr., Esq.
54 Monument Circle, Fourth Floor
Indianapolis, IN 46204

/s/ Jeremy D. Lemon
Jeremy D. Lemon

# EXHIBIT A

# Terms and Conditions

1. ACCEPTANCE - ANY OF THE FOLLOWING ACTS BY SELLER SHALL CONSTITUTE ACCEPTANCE OF THIS ORDER AND ALL OF ITS TERMS AND CONDITIONS: SIGNING AND RETURNING A COPY OF THIS ORDER; DELIVERY OF ANY OF THE GOODS OR PERFORMANCE OF ANY OF THE SERVICES ORDERED; COMMENCEMENT OF PERFORMANCE; OR RETURNING ANY FORM OF ACKNOWLEDGEMENT. ACCEPTANCE OF THIS ORDER IS LIMITED TO THE TERMS AND CONDITIONS CONTAINED HEREIN AND THIS ORDER CAN ONLY BE ACCEPTED ON THESE TERMS. ANY ADDITIONAL OR DIFFERENT TERMS OR CONDITIONS IN SELLER'S ACKNOWLEDGEMENT, GENERAL TERMS AND CONDITIONS OF SALE, INVOICE, ANY PRIOR PROPOSAL OR IN ANY OTHER SELLER DOCUMENT SHALL NOT BE BINDING ON THE BUYER. The Buyer's purchase order and these Terms and Conditions (collectively, the "Order") constitute the entire agreement between the Seller and Buyer with respect to its subject matter. To the extent of any conflict between these Terms and Conditions and any written supply agreement that has been negotiated and executed by authorized representatives of Buyer and Seller that governs the goods or services referenced herein, the terms contained in said supply agreement will control.
2. PRICES - The prices contained in this Order shall be considered as maximum prices not subject to upward revision. If prices are not stated, Seller shall offer its lowest prices, which shall be subject to written acceptance by Buyer. Seller warrants that the prices charged for the goods and/or services covered by the Order will be as low as the lowest prices charged by Seller to any other customers purchasing similar goods and/or services. Prices of any goods, delivered or undelivered, under this Order are not subject to increase by Seller in the event of any governmental action or any cause (even beyond Seller's control) affecting Seller's cost or expenses after the date of this Order, including but not limited to duties, taxes, other governmental charges, assessments, freight and insurance costs and fluctuations in exchange rates.
3. TAXES - No federal, state or local taxes on the goods or services furnished hereunder or on the sale, purchase, transportation, use or possession thereof shall be included in any invoice delivered to Buyer unless specifically itemized. If Buyer furnishes Seller an exemption certificate, or any similar proof of exemption with respect to any federal, state or local tax included in any such invoice, such invoice shall be adjusted to eliminate such tax.
4. DELIVERY - Seller shall comply with the delivery schedule for the Order, including any amendment or supplement to it, specified by Buyer. Buyer shall have the option either to refuse acceptance of any shipment made in advance of the delivery schedule or to accept such shipment but require Seller to defer submission of invoices thereon until such time as the shipment was due to be made in compliance with the delivery schedule set forth in this Order.
5. PACKAGING - Goods must be delivered in standard commercial containers acceptable by carrier for safe transportation at the lowest rate at point of delivery. No charges shall be allowed for drayage, blocking or packaging except as otherwise specified herein. Seller shall assume and pay all extra expenses accruing on account of improper packaging.
6. MARKING - Packages must be marked with shipper's name and Buyer's purchase order number, and must contain two copies of the complete list of goods contained therein. If more than one package is shipped, each one must be numbered. The number of the package must be identified with the contents as shown on the shipping or packaging list. Any extra expense due to dunnage, waiting time, and the like resulting from the lack of the above information shall be deducted from Buyer's remittance in payment of Seller's invoices.
7. MODIFICATION - This Order may not be modified or changed in any manner, except by an instrument in writing signed by an authorized representative of Buyer; provided, however, that Buyer reserves the right to issue written modifications, which the Seller agrees to accept, changing the time or rate of delivery of goods or services covered by the Order. In the event such acceptance by Seller of Buyer's written modification results in an increase or decrease in cost of the goods or services remaining to be delivered, Buyer and Seller agree to negotiate an equitable adjustment of the prices specified herein.
8. WARRANTY - Seller warrants with respect to goods purchased and sold under this Order that: (a) it has good title to the goods, (b) the goods are free from liens, security interests and encumbrances of any kind, (c) the goods conform to the specifications, drawings and samples approved by Buyer in connection with this Order, (d) the goods are fit for the purpose for which Buyer purchased them, (e) the goods are merchantable, (f) the goods are free of defects in design, materials and workmanship and (g) the goods have been manufactured in a good and workmanlike manner using the highest quality material in conformity with the best standard practices. This warranty shall survive any inspection, acceptance or return of any such goods and shall run to Buyer, its successors, assigns, customers and users of its goods. If goods delivered pursuant to this Order are found within 72 months after acceptance not to be as warranted, Buyer may, in addition to any other rights Buyer may have, return such goods to Seller, at Seller's expense, for repair, replacement, or refund of price, as Buyer may elect. Any goods repaired or furnished in replacement shall be subject to all the terms and conditions hereof to the same extent as if initially furnished hereunder. Seller further warrants that all services will be performed in a competent and professional manner, in accordance with the highest standards and best practices in the industry, and in accordance with the specifications agreed or approved by Buyer. Any attempt by Seller to limit, disclaim or restrict any such warranties or remedies by acknowledgement or otherwise shall be null, void and ineffective.
9. INSPECTION OF MATERIAL - Seller agrees to inspect all goods covered by this Order and, when requested by Buyer, to include an inspection certificate with each shipment. All goods shall be subject to Buyer's inspection and approval after arrival notwithstanding any prior inspection or payment. If any goods covered by this Order are defective or otherwise not in conformity with the requirements of this Order, by written notice to Seller, Buyer may elect to: (a) rescind this Order as to such goods, (b) accept goods at an equitable reduction in price, or (c) reject such goods and require the delivery of replacements. Deliveries of replacements shall be accompanied by a written notice specifying that such goods are replacements. If Seller fails to deliver required replacements promptly, Buyer may (i) replace or correct such goods and charge Seller the cost occasioned Buyer thereby, and/or (ii) terminate this Order for default. No inspection (including source inspection), test, approval (including design approval) or acceptance of goods ordered shall relieve Seller from responsibility for defects or other failures to meet the requirements of this Order. Rights granted to Buyer herein are in addition to any other rights or remedies provided at law or in equity. Seller agrees to pay Buyer's expenses, including demurrage, handling and storage charges and freight both ways, with respect to rejected goods.
10. DELAYS - Whenever the timely performance of this Order may be delayed, or is delayed, Seller shall immediately notify Buyer in writing of all relevant information with respect to such delay.
11. RISK OF LOSS - Seller shall bear all risk of loss and damage to goods covered by this Order until Buyer's final acceptance at the destination specified on the face of this Order. This paragraph shall apply notwithstanding any use of the term "F.O.B" or other delivery term in this Order.
12. DESIGN AND INVENTION RIGHTS - If this Order has as one of its purposes design, experimental, developmental or research work, Seller agrees to communicate promptly to Buyer full details of any design or invention (whether or not patentable) conceived or first reduced to practice by Seller or any of its employees in connection with the performance of this Order. Upon Buyer's request, Seller shall assign or cause to be assigned to Buyer without compensation all right, title and interest of Seller or its employees in and to each such design or invention, and perform or cause to be performed all acts (at Buyer's expense) and execute or cause to be executed all papers that are necessary to vest in Buyer full right, title and interest therein, including the patenting thereof.
13. COMPLIANCE WITH LAWS - Seller certifies that the goods to be furnished or the services to be rendered hereunder are in compliance with all applicable federal, state, and local laws, rules and regulations, whether now in force or hereinafter enacted, including, without limitation, the Fair Labor Standards Act of 1938; the Civil Rights Act of 1964; the Federal Food, Drug and Cosmetic Act; the Occupational Safety and Health Act of 1970; and the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"). If this Order relates to goods that may require a consumer warning under Proposition 65, Seller shall be solely responsible for compliance with Proposition 65 for the goods, including providing any required product warnings. Seller shall indemnify, hold harmless, and defend Buyer from all losses, expenses, damages, costs, liabilities, claims, settlements, awards and judgments arising or otherwise related to compliance with Proposition 65 for the goods. Seller further certifies that its price to Buyer hereunder is proper under all applicable laws, and is in compliance with any current federal pricing policy or law directed at controlling or stabilizing prices.
14. INDEMNIFICATIONS - Seller shall defend, indemnify and hold harmless Buyer and Buyer's affiliates, and each of their employees, officers, directors, agents, successors, assigns, customers and end-users of its products, from and against all losses, expenses, damages, costs, liabilities, claims, settlements, awards and judgments based on a claim that any good or service furnished by Seller, as well as any system, device or process incorporating or resulting from the use thereof, constitutes an infringement or misappropriation of any patent, trademark, copyright, trade secret or other intellectual property right. Seller shall defend, indemnify and hold harmless Buyer and Buyer's affiliates, and each of their employees, officers, directors, agents, successors, assigns, from and against all losses, expenses, damages, costs, liabilities, claims, settlements, awards and judgments arising out of, as a result of or in connection with: (a) Seller's acts and omissions in the performance of this Order or (b) any defect in design, materials, workmanship or quality of the goods and/or services or (c) Seller's negligence or willful misconduct or (d) any breach of any express or implied warranty or (e) Seller's violation of any federal, state or local law, executive order, rule or regulation. Seller shall maintain commercial general liability insurance (including products liability/completed operations coverage) with adequate limits satisfactory to Buyer and shall maintain proper Workmen's Compensation and Employer's Liability insurance covering all employees engaged in the performance of this Order, and, upon Buyer's request, shall furnish to Buyer appropriate evidence of such insurance.
15. DRAWINGS AND DATA - Buyer retains all rights in drawings, engineering instructions, specifications and other data furnished to Seller by Buyer, and no such drawings, engineering instructions, specifications, or other data shall be reproduced or in any way used, in whole or in part, in connection with goods and/or services furnished to others, and must be returned to Buyer immediately upon Buyer's request.
16. MATERIALS AND TOOLS - If Buyer furnishes to Seller any dies, molds, jigs, tools, test equipment, and the like ("Tooling"), or pays for Tooling, then title thereto shall remain or vest in Buyer, and Seller shall identify, maintain and preserve all Tooling. All Tooling must be repaired, renewed and fully insured by Seller against loss and damage, as directed by Buyer. All Tooling is subject to removal by Buyer at any time upon Buyer's demand.
17. CANCELLATION - For Seller's failure to comply with any terms or conditions hereof, Buyer may cancel this Order, in whole or in part, without further liability to the Seller. Such cancellation, however shall be without prejudice to any claim Buyer may have against Seller for breach inducing cancellation. Failure of Buyer to insist on strict performance or observance by Seller of this Order, these Terms and Conditions or Buyer's right in any one or more instances shall not constitute a waiver by Buyer of such performance, conditions or rights either then or for the future. Buyer may cancel this Order without further cost or liability to Seller in the event that any proceedings are instituted by or against Seller in bankruptcy or insolvency, or in the event of any assignment by Seller for the benefit of creditors.
18. ASSIGNMENT - Seller shall not, without prior written consent of Buyer, assign or pledge this Order or any of Seller's right or obligations hereunder. Any assignment or attempted assignment made without such consent shall be void as to Buyer.
19. GOVERNING LAW; LANGUAGE - For Orders placed by a Buyer incorporated or organized within the United States of America, the validity, performance and all matters relating to the interpretation and effect of this Order and all further documents executed pursuant to it shall be construed and interpreted in accordance with the laws of the State of Georgia, USA, excluding its rules on the conflict of laws. For Orders placed by a Buyer incorporated or organized within Canada: (1) the validity, performance and all matters relating to the interpretation and effect of this Order and all further documents executed pursuant to it shall be construed and interpreted in accordance with the laws of the Province of Ontario, excluding its rules on the conflict of laws, and (2) the parties have required that this Order and all deeds, documents and notices relating to this Order be drawn up in the English language. Les parties aux présentes ont exigé que le présent contrat et tous autres contrats, documents ou avis afférents aux présentes soient rédigés en langue anglaise. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods is not applicable to this Order.
20. SUPPLIER CODE OF CONDUCT – Seller shall comply with Buyer's Supplier Code of Conduct, which can be viewed at http://www.rheem.com/about/legal, in providing goods and services under this Order. Any violation of the Supplier Code of Conduct may cause Buyer to cease doing business with Seller.

RHEEM SALES COMPANY INC.     Page **2** of **2**     PO # 40100411-98     REV # 0